UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAST TRAK INVESTMENT COMPANY, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>RICHARD P SAX, et al.,<br><br>　　　　　　Defendants. | Case No. 4:17-cv-00257-KAW<br><br>**MOTION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 59 |

On January 19, 2017, Plaintiff Fast Trak Investment Company, LLC filed this action against Defendants Richard P. Sax and the Law Offices of Richard Sax for breach of contract and breach of fiduciary duty in connection with purchase agreements of prospective, future-earned legal fees. Before the Court is Plaintiff's motion for summary judgment as to the first and third causes of action.[1]

On May 3, 2018, the Court held a hearing, and, after careful consideration of the parties' arguments and moving papers, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment on the first and third causes of action.

## I.　BACKGROUND

Plaintiff Fast Trak is a Delaware limited liability company. When Fast Trak contracted with Defendant Richard Sax, its principal place of business was in New York. (Decl. of Robert Coppinger, "Coppinger Decl.," Dkt. No. 59-1 ¶ 2; Decl. of Kira A. Schlesinger, "Schlesinger Decl.," Dkt. No. 59-2 ¶¶ 2-3, Ex. 1.) Fast Trak is in the business of litigation funding, and it

---

[1] Plaintiff acknowledges that the second cause of action to compel arbitration appears to be moot. (Pl.'s Mot., Dkt. No. 59 at 3 n. 1.) The fourth cause of action is for a writ of attachment. At the hearing, Plaintiff requested that the undersigned retain jurisdiction over the fourth cause of action pending the discovery of Sax's financial situation.

United States District Court
Northern District of California

executed the contracts at its New York offices. (Coppinger Decl. ¶ 3.) Beginning in January 2013, Defendant Richard Sax, individually and on behalf of his law firm, entered into a series of Assignment, Sale, Springing Assignment & Equitable Lien Agreements with Fast Trak Investment Company, LLC. (Coppinger Decl. ¶ 4; Schlesinger Decl. ¶ 3, Ex. 1; Decl. of Richard Sax, "Sax Decl.," Dkt. No. 63 ¶ 3.). Through these agreements, Fast Trak purchased a portion of the prospective future proceeds from Sax's contingency fee litigation. (Coppinger Decl. ¶ 5; Schlesinger Decl. ¶3, Ex. 1; Sax Decl. ¶ 4.)

The primary underlying agreements were signed by clients of the Sax firm, and countersigned by Sax. (Schlesinger Decl. ¶ 3.) Defendant Sax signed both individually and as an authorized representative of Defendant Law Offices of Richard Sax. (Schlesinger Decl. ¶ 3, Ex. 1.) The Sax clients agreed to be liable to Fast Trak for a portion of their settlements if, and only if, certain conditions precedent occurred. On these contracts, Sax agreed to act as a fiduciary of Fast Trak to ensure that any proceeds due to Fast Trak were properly paid. (Schlesinger Decl. ¶ 4.) These proceeds would be paid upon resolution of the underlying litigation and receipt of the proceeds in each action. Under the Agreements, Fast Trak would only receive payment if the specified condition precedent occurred. If it did not, Fast Trak would lose its entire investment.[2] (Schlesinger Decl. ¶ 4; Coppinger Decl. ¶ 8.)

The Agreements state that Fast Trak "Seller intends this transaction to be and agrees that this transaction is a purchase and sale and is not a loan." (Schlesinger Decl. ¶ 3, Ex. 1.) Fast Trak has no involvement in the underlying litigation. (Schlesinger Decl. ¶ 5(a), Ex. 1; Coppinger Decl. ¶ 5.) The contracts further state that "the Seller acknowledges that Purchaser has no influence, power or control over any matter relating to the Litigation." (Schlesinger Decl. ¶5(c), Ex. 1 at 1-2 (Representations and Warranties of Seller, § 1(r))). Likewise, Defendants agreed there was no reliance on any representation by Plaintiff. (Schlesinger Decl. ¶5(d).) These sections were signed or initialed by Sax. *Id.* Sax also countersigned a letter acknowledging that he had previously

---

[2] The condition did not occur in numerous cases including *Monigan v. Presto*, *Pacheco v. Santa Rosa*, *McQuaid v. Kaiser*, and *Hashim v. Braeton Purcell*. (*See* Pl.'s Mot. at 4 n. 3.) Plaintiff concedes that, assuming Sax's interrogatory responses are accurate, Sax owes nothing on those cases.

2

obtained funds from another company, Alliance Legal Solutions, and that Fast Trak was paying off that debt and wiring the balance directly to Sax for a total of $132,000. (Schlesinger Decl., ¶ 6; Ex. 2.) In each of the primary Agreements, the required condition precedent was a judgment or settlement in resulting in proceeds to the sellers. *Id.* (Schlesinger Decl., Ex. 1.)

In addition to the primary cases, Defendant Sax also pledged secondary cases as an inducement for Fast Trak to invest. (Schlesinger Decl. ¶ 3, Ex. 1.) Fast Trak would only be paid from attorneys' fees realized by Sax as proceeds from litigation. Each secondary agreement contained acknowledgements signed by Sax that the Agreements were either Immediate Assignments or Springing Assignments. Sax further waived certain defenses:

> SAX hereby waives any and all defenses to the enforcement of this Agreement and the Exhibits and specifically and unconditionally waives any claims that the attorney's fees and disbursements are not assignable or that any other provision of this Agreement and the Exhibits is invalid or unenforceable in any respect. Further, SAX agrees that both FAST TRAK and SAX participated in the drafting of this agreement.

(Schlesinger Decl., ¶ 5(e), Ex. 1 (Waiver of Defenses § 2(4))).

On March 28, 2016, Sax filed for bankruptcy protection. (*In re Sax,* Case No. 1:16-bk-10251 (N.D. Cal.). Upon discovery of the bankruptcy, Fast Trak filed a claim for $465,159.60. (Schlesinger Decl. ¶ 7, Ex. 3.) On or around October 31, 2016, Fast Trak learned Sax had moved to dismiss the bankruptcy voluntarily. (Schlesinger Decl. ¶ 8.) Fast Trak wrote to Sax in care of his bankruptcy attorney asking for information regarding the underlying cases. (Schlesinger Decl. ¶ 8, Ex. 4.) On that same date, Sax responded with a partial list of cases in which the condition precedent had occurred, and a promise to conduct additional research. (Schlesinger Decl. ¶ 9, Ex. 5.) Sax dismissed his bankruptcy on November 17, 2016. (Schlesinger Decl. 10, Ex. 6.) On December 19, 2016, Sax sent Fast Trak $1000.00, as "payment # 1 towards our account balance." (Coppinger Decl. ¶ 6; Schlesinger Decl. ¶ 11, Ex. 7.) No further payments were made. (Coppinger Decl. ¶ 6.) This action was filed on January 19, 2017. (Compl., Dkt. No. 1.)

Fast Trak discovered that the condition precedent for payment by Sax occurred in some cases. (Coppinger Decl. ¶ 7.) For example, Defendants' document production shows that Roger Gadow, a Primary Agreement, resulted in a settlement of $199,500.00 on April 28, 2014.

3

1  (Schlesinger Decl. 18, Ex. 14.) Of that recovery, Defendants' attorneys' fees award was $79,800. (*Id.*; Sax Decl. ¶ 8.) Fast Trak only learned of the dates and amounts of settlements during discovery in this litigation. (Coppinger Decl. ¶ 7.) The Agreements Sax signed in primary cases, including *Gadow*, stated he would notify Fast Trak within five days of settlement, and hold that portion of the proceeds for the benefit of Fast Trak. (Schlesinger Decl. ¶ 4; *see, e.g.,* Schlesinger Decl., Ex. 1 at 8.) Sax failed to provide timely notice or forward any of the amounts due as required. (Coppinger Decl. ¶ 7.)

While the condition precedent did not occur in all secondary cases, Sax disclosed documentation in this case showing he obtained at least $306,805.00 in attorney's fees. (Schlesinger Decl. ¶ 20, Ex. 14.) This is in addition to amounts the primary clients obtained, and for which Sax was to act as fiduciary for Fast Trak. (Coppinger Decl. ¶ 4.) The amount currently due to Fast Trak is approximately $430,000. (Schlesinger Decl. ¶ 20.) Only one payment of $1,000 was ever tendered against that sum by Defendants. (Coppinger Decl. ¶ 6.)

On March 15, 2018, Fast Trak filed a motion for summary judgment. (Pl.'s Mot., Dkt. No. 59.) On March 29, 2018, Defendants filed their opposition. (Defs.' Opp'n, Dkt. No. 62.) On April 5, 2018, Plaintiff filed its reply. (Pl.'s Reply, Dkt. No. 69.)

## II.  LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

Plaintiff moves for summary judgment on the first and third causes of action for breach of contract and breach of fiduciary duty. (Compl. ¶¶ 14-20, 25-29.)

#### A. Choice of Law

As an initial matter, Defendants argue that the motion for summary judgment is defective

on the grounds that Plaintiff failed to file a separate motion to determine which state's laws apply to the agreements at issue. (Def.'s Opp'n at 13-14.)

In its reply, Plaintiff astutely notes that Defendants' argument mistakenly relies on a handful of tort cases. (Pl.'s Reply at 6.) Plaintiff argues that federal courts generally "hold parties to their contractual promises to litigate in a specified forum, and apply the same reasoning to contractual choice of law clauses." *Id.* The Court agrees. In fact, courts in this district have found that choice of law determinations "are pure legal questions well-suited to summary judgment." *Flintkote Co. v. Aviva PLC*, 177 F. Supp. 3d 1165, 1172 (N.D. Cal. 2016) (citing *Shannon–Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001); *TH&T Int'l Corp. v. Elgin Indus., Inc.*, 216 F.3d 1084 (9th Cir. 2000)). Thus, that Plaintiff did not seek an earlier determination regarding the choice of law is certainly not fatal to the instant motion for summary judgment.

The Court must now determine whether California or New York law applies. "When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999). Thus, California law determines the effect of the contractual choice-of-law provision. Under California law, there is a "strong policy favoring enforcement of [choice-of-law] provisions." *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal.4th 459, 464–65 (1992). To determine whether a choice-of-law provision is enforceable, California courts follow the Restatement (Second) of Conflict of Laws § 187, which provides that a choice-of-law provision will be enforced unless either,
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2). Here, Plaintiff's principal place of business was located in New York at the time of contracting, which is sufficient to constitute a substantial relationship to Plaintiff. (*See* Pl.'s Mot. at 8.) Defendants argue that California's public policy conflicts with the application of New York law based on their characterization that the

6

Agreements are "illegal, usurious, and champertous transactions" and that California has a strong interest in protecting its residents against such recourse loans. (Defs.' Opp'n at 16-17.) Defendants fail to acknowledge that New York law provides similar protections when it comes to usury and champerty. *See* discussion *infra* Part III.B.i.b. Thus, Defendants' argument is unavailing.

Furthermore, the contract containing the choice-of-law provision must govern the claim that is alleged to arise from it. *Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1127 (N.D. Cal. 2011) (citing *Nedlloyd*, 3 Cal. 4th at 469). Here, the choice of law provision in the Agreements clearly governed the breach of contract and breach of fiduciary duty claims.

Thus, the undersigned finds that the contracted choice of law provisions requiring the application of New York law is enforceable.

### B. Motion for Summary Judgment

#### i. Breach of Contract

Plaintiff's first cause of action is for breach of contract. (Compl. ¶¶ 14-20.) Defendants argue that there was no breach of contract because the contracts are not enforceable on the grounds that the Agreements "were illegal, usurious, and champertous recourse loans." (Defs.' Opp'n at 22.) Plaintiff contends that the Agreements were purchases of prospective proceeds from Defendants' contingency fee litigation rather than recourse loans. (Pl.'s Mot. at 4.) Defendants have presented no evidence that they abided by the terms of the Agreements. Indeed, it is undisputed that, aside from one $1,000 payment, Defendants have made no payments pursuant to the terms of the Agreements. It is also undisputed that the condition precedent—the recovery of attorneys' fees—was met in certain cases, including *Gadow*. Thus, the Court must determine whether the Agreements are loans or purchase agreements to conclude whether they are enforceable. If they are purchase agreements, summary judgment must be granted as to the first cause of action for breach of contract, because the existence of the agreements and Defendants' failure to abide by the terms thereof is undisputed. Thus, the only issue is whether Defendants' defenses are valid.[3]

---

[3] The Court notes that Sax waived all defenses pursuant to the terms of the Agreements. *(See, e.g.,* Schlesinger Decl. ¶ 5(e), Ex. 1 at 13.) For the purposes of this motion, the Court will assume that

7

### a. Whether the Agreements were loans.

In opposition, Defendants argue that the Agreements constitute unenforceable recourse loans, such that there could be no breach of contract. (Defs.' Mot. at 17-18, 22.) Specifically, Defendants argue that the Agreements were loans, because Plaintiff could recover monies from a "lengthy list of 'secondary' cases as backup collateral" in order to collect on its investment if the primary cases did not realize sufficient proceeds. (Defs.' Opp'n at 17-18.) The Court notes that several of the primary cases also served as secondary cases for other primary cases. (*See* Schlesinger Decl., Ex. 14.)

Plaintiff argues that the Agreements are assignments or the sale of proceeds, because repayment was uncertain and contingent upon the condition precedent of a favorable outcome for Sax's pledged cases, rather than a loan. (Pl.'s Reply at 9.) One defining characteristic of a business transaction is whether the invested amount is at risk such that repayment is uncertain. *NY Capital Asset Corp. v. F & B Fuel Oil Co.,* 58 Misc. 3d 1229(A), at *8 (N.Y. Sup. Ct. 2018) (Where "repayment is not absolute; the transaction is sufficiently risky such that it cannot be considered a loan as a matter of law. . . ."). In *NY Capital,* the trial court found that "purchases and sales of future receivables and sales proceeds . . . are common commercial transactions expressly contemplated by the Uniform Commercial Code" and that several New York trial courts "have considered and rejected arguments that agreements to purchase receivables and sales proceeds were loans." 58 Misc. 3d 1229(A), at * 6 (citations omitted). Here, despite Defendants' protestations to the contrary, repayment was contingent on Defendants' recovery, such that repayment could not be considered absolute. In fact, the *Monigan* case resulted in a defense verdict, while the *Pacheco* case was abandoned, and Plaintiff asserts that, in accordance with the terms of the Agreements, no payment is due on those cases. (Pl.'s Reply at 9.) That the Agreements referenced secondary cases as collateral does not change the fact that recovery in those cases was also required before payment was due. (*See* Defs.' Opp'n at 17-18.) As such, without citing to any legal authority, Defendants seek to impose more risk on the purchase of

---

the waiver provision is similarly unenforceable should the Agreements be unenforceable.

future proceeds than the law requires.

"The next quintessential factor in determining the definite nature of a repayment requirement is whether the agreement has a finite term or not." *NY Capital*, 58 Misc. 3d 1229(A), at *7 (citing *K9 Bytes, Inc. v Arch Capital Funding, LLC*, 56 Misc 3d 807, 817; 57 N.Y.S.3d 625 (Sup. Ct., Westchester Co. 2017)). Essentially, when payment is not set at a fixed time, the hallmark of a loan is missing. *See id.* Here, each of the Agreements makes allowance for the possibility that repayment may take many years, potentially going beyond the original schedule. (*See, e.g.,* Schlesinger Decl., Ex. 1 at 002.) Thus, there was no end date by which payment was required.

In light of the foregoing, the Court finds that repayment under the Agreements are not absolute, thereby rendering them purchase agreements rather than loans, which are generally valid under New York law.

### b. The Agreements are not usurious or champertous.

Defendants contend that the Agreements are illegal, because they are usurious and champertous. (*See* Defs.' Opp'n at 22.) Under New York law, "if the transaction is not a loan, there can be no usury, however unconscionable the contract may be." *NY Capital,* 58 Misc. 3d 1229(A), at *6 (citing *Rabid Capital Finance, LLC v. Natures Market Corp.*, 57 Misc 3d 979 (Sup. Ct., Westchester County 2017)).[4] Since the Agreements are assignments of the sale or proceeds rather than loans, there could be no usury.

Defendants' claim that the Agreements were champertous similarly fails. (*See* Defs.' Opp'n at 20.) Champerty requires that Fast Trak exert some level of control over the primary or secondary litigation. It does not apply where litigation is either ongoing or will be undertaken regardless of the contract at issue. Indeed,

> the purpose of New York's champerty statute "was to prevent attorneys and solicitors from purchasing debts, or other things in action, for the purpose of obtaining costs by a prosecution thereof, and [it] was never intended to prevent the purchase for the honest purpose of protecting some other important right of the assignee".

---

[4] California law also requires either a loan or a forbearance for there to be usury. *Sw. Concrete Prods. v. Gosh Constr. Corp.*, 51 Cal. 3d 701, 705 (1990).

9

*Tr. For the Certificate Holders of Merrill Lynch Mortg. Inv'rs, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 199, 918 N.E.2d 889 (2009)(quoting *Baldwin v. Latson*, 2 Barb Ch 306, 308, 1847 WL 4161 (N.Y. Ch. 1847)). Here, Plaintiff did not exert any control over the underlying cases, which is evidenced by the terms of the Agreements that explicitly stated as much. (*See* Pl.'s Mot. at 11-12; Schlesinger Decl. ¶5, Ex. 1.) In opposition, Defendants argue that "[e]ven though Plaintiff avers that it wishes to have no control over the litigation matters, it would seem to be complaining that Defendant withdrew from a case he ultimately decided was without merit, which is his professional duty." (Defs.' Opp'n at 22.) Complaining, however, is not the same as exerting control. In fact, the very act of complaining indicates a lack of control over the underlying litigation, and, therefore, Fast Trak's actions do not rise to the level of champerty.

For the reasons set forth above, the Agreements are not usurious or champertous, and are, therefore, enforceable.

### c. Merits of the breach of contract claim

In failing to oppose the motion for summary judgement on the merits of the breach of contract claim, and instead relying on the argument that the Agreements were unenforceable loans, Defendants have waived this argument. (*See* Defs.' Opp'n at 22.)

Nevertheless, the Court finds that Plaintiff has met its burden of producing sufficient evidence to affirmatively demonstrate that valid contracts were entered into, the condition precedent occurred in many cases, and that Defendants did not perform as agreed, which resulted in damages to Plaintiff in the form of nonpayment. Since Defendants have submitted no evidence in an attempt to establish the existence of a material factual dispute, the Court finds that no reasonable trier of fact could find other than for the moving party.

Accordingly, the Court grants the motion for summary judgment on the breach of contract claim.

### ii. Breach of Fiduciary Duty

Plaintiff's third cause of action is for breach of fiduciary duty. (Compl. ¶¶ 25-29.) Again, Defendants sole argument is that there was no breach of fiduciary duty because the Agreements are not enforceable, such that no fiduciary duty was owed. (Defs.' Opp'n at 23.) Specifically,

Defendants argue that they were "not holding money for Plaintiff. Plaintiff loaned money to Defendant." *Id.* As discussed above, the Agreements are enforceable as purchase agreements and were not loans. *See* discussion *supra* Part III.B.i.a. Based on the undisputed fact that Sax signed the Agreements containing the fiduciary duty clause, if the Agreements are valid, Defendants owed a fiduciary duty. Defendants advance no other arguments nor do they identify any evidence or legal authority to suggest that a fiduciary duty was not owed. Since their sole argument fails, Defendants have waived any argument that they did not owe a fiduciary duty.

Accordingly, summary judgment must be granted in regards to the third cause of action.

### C. Amount of Damages

Plaintiff claims that it is owed approximately $430,000. (Schlesinger Decl. ¶ 20.) At the hearing, Plaintiff clarified that it calculated that amount based on Defendants' document production, which included several "disbursement" records, showing what Defendants purportedly collected on cases, including the attorneys' fees, costs, and the funds disbursed to the respective clients. (*See* Schlesinger Decl., Ex. 14.) While Plaintiff is unable to provide an amount certain at this time, it is undisputed that Defendants collected some monies and did not forward the proceeds to Plaintiff pursuant to the Agreements. For example, in the *Gadow* case, which served as both a primary and secondary case, Sax collected at least $79,800.00 in attorneys' fees. *Id.* at 4. Based on the terms of the *Gadow* Agreement, signed on March 22, 2013, the payment schedule required a pay-off amount of $11,448.20 if the amount was paid on the third anniversary—March 22, 2016—which has passed. (Schlesinger Decl., Ex. 1 at 2.) The payment schedule provides that the total pay-off amount increases by $450.00 for each additional six-month period. *Id.* Thus, at a minimum, since no payment has been made, it is undisputed that Plaintiff sustained damages in excess of $11,448.20. *See id.* It is also undisputed that funds were disbursed to clients that should have been held for Plaintiff pursuant to the terms of the Agreements signed by the respective clients, which required that funds not be disbursed to them "without first fully satisfying Fast Trak's lien." (*See* Schlesinger Decl., Ex. 1 at 6 ("Irrevocable Instructions to Counsel"), Ex. 1 at 8-9 ("Acknowledgement by Counsel").) Taken together, these facts are sufficient to satisfy the damages element of the breach of contract and breach of fiduciary duty claims.

11

As discussed at the hearing, the Court will address the damages in more detail after the parties furnish supplemental briefing as ordered.

## IV. CONCLUSION

In light of the foregoing, the Court GRANTS Plaintiff's motion for summary judgment on the first and third causes of action.

All remaining trial and pretrial dates and deadlines are VACATED.

IT IS SO ORDERED.

Dated: May 11, 2018

KANDIS A. WESTMORE
United States Magistrate Judge