UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAST TRAK INVESTMENT COMPANY, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>RICHARD P SAX, et al.,<br><br>    Defendants. | Case No. 4:17-cv-00257-KAW<br><br>**ORDER AWARDING DAMAGES**<br><br>Re: Dkt. Nos. 71-76 |

On May 11, 2018, the Court granted Plaintiff Fast Trak Investment Company, LLC's motion for summary judgment against Defendants Richard P. Sax and the Law Offices of Richard Sax for the first and third causes of action for breach of contract and breach of fiduciary duty in connection with purchase agreements of prospective, future-earned legal fees. (5/11/18 Order, Dkt. No. 71.) Therein, the Court ordered supplemental briefing regarding the amount of damages, including reasonable attorney's fees and costs, which is the only outstanding issue to be decided. *Id.* at 12.

Upon review of the supplemental briefing, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, awards Plaintiff $323,612.21 in connection with its successful motion for summary judgment.

### I. BACKGROUND[1]

Plaintiff Fast Trak Investment Company, LLC is in the business of litigation funding.

---

[1] For the sake of brevity, the undersigned will not repeat the extensive background information provided in the Court's May 11, 2018 order granting Fast Trak's motion for summary judgment. (Dkt. No. 71.)

Beginning in January 2013, Fast Trak made investments in four cases of Defendant Richard Sax, individually and on behalf of his law firm, one of which received multiple fundings from Fast Trak. (*See* Decl. of Jamie Burke, "Burke Decl.," Dkt. No. 75-1 ¶ 4.) The cases are: *McQuaid v. Kaiser Foundation Health Plan* ("Investment 1"); *Myers Monigan v. National Presto Industries/Walmart Stores* ("Investments 2, 3, and 4"); *Gadow v. Rest* ("Investment 5"); and *Terrie Wolfe-Lee v. Midcentury Insurance Company* ("Investment 6"). (Burke Decl. ¶ 4, Ex. 1, Table A.)

Through these agreements, Fast Trak purchased a portion of the prospective future proceeds from Sax's contingency fee litigation. There are two categories of contracts: Primary Contracts and Secondary Contracts. The Primary Contracts are for the prospective proceeds of the case being funded, and were signed by clients of the Sax firm, and countersigned by Sax, individually and as an authorized representative of Defendant Law Offices of Richard Sax. The Secondary Contracts are limited, in that they only come into play if Sax obtains attorney's fees. In most cases, Sax will only obtain attorney's fees on a successful case. In one instance, the *Wolfe-Lee* case settled for $10,000, but Sax took his attorney's fees and left the underlying plaintiff with nothing. (Burke Decl. ¶ 9.)

Pursuant to the terms of the agreements, the amount due on Fast Trak liens, adjusted according to the schedule in each of the Primary Contracts, and as reflected in Exhibit 1 at "Calculation of Total Damages," is $315,601. ("Calculation of Damages," Burke Decl. ¶ 31, Ex. 1 at 3.) The amount is based upon recovery in the one successful primary case, *Gadow v. Kaiser*, plus the attorney's fees independently pledged by Sax in the successful Secondary Contracts. (*See* Burke Decl., Ex. 1 at 2.)

In Primary Contracts, "proceeds" are defined as amounts that would accrue to the client if a favorable resolution of the case occurs, such as settlement, jury verdict or arbitration award. Each Primary Contract had a schedule of payment for the investment by Fast Trak. (Burke Decl. ¶¶ 6-7.) Primary Contracts included the obligation by Richard Sax to act as a fiduciary on behalf of Fast Trak and provide notice and hold the funds due to Fast Trak from the client's proceeds. *Id.* at ¶ 8.

2

Because Sax sought large investments in primary cases, Sax independently pledged his own attorney's fees in five cases, each with certain "Secondary Contracts" pledging his fees in order to obtain additional investment by Fast Trak. (Burke Decl., Ex. 1, Step 2.) In total, there were 17 cases pledged by Sax, with Sax obtaining attorney's fees in 12 cases:

1. Carolyn Alexander v Geico Insurance (successful)
2. Myers Monigan v National Presto Industries, Walmart Stores
3. Myers Monigan v Sutter Medical Center
4. McQuaid v Kaiser Foundation Health Plan
5. Terrie Wolfe-Lee v MidCentury Insurance Company (successful)
6. Amador Pacheco V City of Santa Rosa
7. Valency Gomes V Daryl Rossi (successful)
8. Heckenlively v Progressive Insurance (successful)
9. Michael Brallier v Medtronic (successful)
10. Lorraine Matson v Jean Chessmore (successful)
11. Michael Dolan v Manuel Silva (successful)
12. Mohammad Amin Hashim v Brayton Purcell LLP
13. Virginia Marquez v Shari Day Moore (successful)
14. Speaks v Ybarra (successful)
15. Konnof v Felder (successful)
16. Roger Gadow V Rest (successful)
17. Sax v. Benedetti (successful).

(Burke Decl. ¶ 11, Ex. 1; Dkt. No. 72-2 at 4.)

In Secondary Contracts, the amount due is the amount that would be realized if the primary cases had a positive outcome. (Burke Decl. ¶ 12.) The Secondary Contracts stated the payment requirements as follows:

> (b) Any and all sums recovered in the "Primary" case will at all times be applied to pay down the entirety of the balance . . . which shall be determined by the repayment schedule in Section B of the [Primary] Agreement and which has also been set forth in Section B of this agreement.
>
> (c) If there has not been a monetary recovery in the "Primary" case great enough to pay the entire balance due pursuant to Section B at the time when the first (first means "earliest to occur") "Secondary" case yields any monetary recovery by settlement, judgment or otherwise; SAX shall then pay to FAST TRAK an amount equal to the entire remaining balance then due as per Section B of this agreement; or if the amount of attorney's fees and disbursements recovered in said Secondary case is less than the entire balance due as per Section B, then SAX shall pay to FAST TRAK the entirety of the attorneys fees and disbursements recovered in the first said Second Case. . . .

*Id.* The Secondary Contracts were required by Fast Trak because the requested further investment in the given primary case did not, standing alone, support additional purchase of the likely

3

proceeds. (Pl.'s 2d. Suppl. Br. at 4; Burke Decl. ¶ 13.) Essentially, the Secondary Contracts insure against the Primary Contract case failing to realize the investment amount and to meet the schedule set forth on the first page of every Primary Contract. (Burke Decl. ¶ 13.)

The schedule referenced is the payment that would have been due from the primary case plaintiff if the case netted sufficient proceeds to cover Fast Trak's investment. (Burke Decl. ¶ 14.) Each Primary Contract lists the "Property to be purchased from Seller under the agreement." (Burke Decl. ¶ 15.) It then lists a "Payment Schedule" that is set out for three years. *Id.* There is no requirement that the full payment be remitted within three years, and the Primary Contracts provide that, if the full payment is not made within three years, a proportionate amount is added every six months until the full payment is realized. *Id.* This calculation is done for each Primary Contract, and the attorney's fees pledged in Secondary Contracts are applied to the total amounts due. (Burke Dec., ¶ 17, Ex. 1 at 1-2.)

Despite Defendants' success on the *Gadow* case and in other secondary cases, he has only remitted a single payment of $1000.00 in 2016, which was declined by Fast Trak, so no payments have been made. (Burke Decl. ¶ 33.) This action was filed on January 19, 2017.

On March 15, 2018, Fast Trak filed a motion for summary judgment on the first and third causes of action. On May 11, 2018, the Court granted the motion for summary judgment and ordered supplemental briefing regarding the amount of damages. (5/11/18 Order, Dkt. No. 71.)

On May 24, 2018, Plaintiff filed a supplemental brief. (Pl.'s 1st Suppl. Br., Dkt. No. 72.) On June 7, 2018, Defendants filed a response, in which Defendants objected to the claim for damages on the grounds that Plaintiff did not explain how the damages were calculated. (Defs.' 1st Suppl. Br., Dkt. No. 73.) On June 21, 2018, the Court agreed with Defendants, and ordered Plaintiff to file a second supplemental brief that included "a robust explanation of how the damages were calculated, including an identification of the funds that should have been disbursed from the primary and secondary cases." (Dkt. No. 74 at 1.) Plaintiff was advised that this was its final opportunity to brief the damages issue, and that the failure to sufficiently explain the calculation would result in the undersigned making a damages determination of its own based on the incomplete information provided. *Id.* On July 3, 2018, Plaintiff filed its second supplemental

4

1 brief. (Pl.'s 2d Suppl. Br., Dkt. No. 75.) On July 13, 2018, Defendants filed a response, in which

2 they took "no position regarding the damages claimed by Plaintiff." (Defs.' 2d Suppl. Br., Dkt.

3 No. 76.)

## II. DISCUSSION

Since the Court has already granted summary judgment on the first and third causes of action for breach of contract and breach of fiduciary duty, the only outstanding issue is the amount of damages and attorneys' fees and costs.

### A. Damages

As an initial matter, Defendants have expressly taken "no position" regarding the amount of damages claimed in the second supplemental brief, rendering the amount of damages as unopposed. (Defs.' 2d Suppl. Br. at 1.) Accordingly, the Court need only ensure that the calculations provided by Plaintiff appear accurate. Plaintiff seeks a total of $315,601.00 in damages. (Pl.'s 2d Suppl. Br. at 6-7; Burke Decl. ¶ 31, Ex. 1.) This amount includes $13,698.00 for the primary case (*Gadow*), and $301,902.00 for the pledged secondary cases. (Pl.'s 2d Suppl. Br. at 6.)

#### 1. Calculation

Each of the purchase agreements contained a payment schedule set out for three years, although payment within three years is not required. (Pl.'s 2d Suppl. Br. at 4; Burke Decl. ¶ 15.) One such payment schedule is as follows:

> Total Pay-Off Amount to be paid by the Seller to FAST TRAK:
> Minimum amount due on or before the first six (6) month Anniversary: $ 21,194.43
> After Six (6) month Anniversary, but on or before One Year Anniversary: $ 25,307.26
> After One Year Anniversary, but on or before
> 18 month Anniversary: $ 30,218.19
> After 18 month Anniversary, but on or before Two Year Anniversary: $ 36,082.10
> After Two Year Anniversary, but on or before
> 30 month Anniversary: $ 43,083.91
> After 30 month Anniversary, but on or before
> Three Year Anniversary: $ 51,444.44
> After the Three-Year Anniversary, the total pay-off amount shall continue to increase in a Similar fashion by $2,250.00 for each additional six-month period.

5

(Pl.'s Pl.'s 2d Suppl. Br. at 4; Burke Decl. ¶ 15, Ex. 13; *see also* Decl. of Kira A. Schlesinger, "Schlesinger Decl.," Dkt. No. 75-2, Ex. 2.)

Since Defendants never paid, under the terms of the agreements, the amount owed is the full payment due at time of judgment in this matter, with each contract calculated individually based on when it was executed. In other words, in the payment schedule exemplar set forth above, the amount due is calculated by taking the amount due if paid before the third-year anniversary ($51,444.44) and adding $2,250.00 for each additional period until paid in full. (Burke Decl. ¶ 16.) In the example given, a contract signed on March 23, 2013 and paid in full on May 24, 2018 would result in a payment due to Fast Trak of $62,694. (*See* "Example of Primary Contract Calculation," Schlesinger Decl., Ex. 2, Example at Bates No. FT-0000173 – FT-00000573.)

Since Fast Trak's recovery is based on primary and secondary cases, and several of the secondary cases were pledged to more than one primary case, the Court required Plaintiff to submit a spreadsheet showing (1) each of the Primary Contracts signed by clients of Richard Sax, and (2) the Secondary Contracts signed by Defendant Richard Sax and Law Offices of Richard P. Sax, individually and as agent for his law firm. (Burke Decl. ¶ 18, Ex. 1.) As reflected in the Spreadsheet, the first step is to determine the amount of the liens based upon the schedules in the Primary Contracts. (Burke Decl. ¶ 19, Ex. 1, Table A.) The Primary Contract recovery is applied first to pay down the Fast Trak lien. (Burke Decl. ¶ 20, Ex. 1, Table B.) Only one of the Primary Contracts resulted in proceeds to apply to Fast Trak's liens. (Burke Decl. ¶ 21, Ex. 1, Table B.)

Table B shows that while two cases resulted in proceeds, only *Gadow* had funds available to pay down the Fast Trak liens. (Burke Decl. ¶ 22.) This is because, while the *Terrie Wolfe-Lee* case settled, the underlying plaintiff took nothing. Richard Sax realized $3,500 in attorney's fees and those fees would then be applied to Fast Trak's liens. *Id.* Fast Trak asserted no claim against Ms. Wolfe-Lee as she realized zero from her action. (Burke Decl. ¶ 22, Ex. 1, Waterfall (Step 1).) As the underlying plaintiff's portion of recovery was insufficient to cover Fast Trak's lien and the attorney executed Secondary Contracts, the attorney's fees pledged on won/settled cases applied to settle the outstanding Fast Trak liens. (Burke Decl. ¶ 23, Ex. 1.) Table A shows that Sax executed Secondary Contracts in five investments (Investment 1, 2, 3, 4 and 5), each with their own pay-off

amount. *Id.* The lien from Investment 5 (*Gadow*) was accounted for in the primary case as reflected in Exhibit 1, Table B. *Id.* Fast Trak applies a waterfall to investments 1, 3, 4 and 6 to calculate the total amount due to Fast Trak. (Burke Decl. ¶ 24, Ex. 1, Step 2.)

The amount owed, but not paid, to Fast Trak from *Gadow* – the Primary Contract that realized proceeds to the underlying plaintiff – is $13,698. (Burke Decl. ¶ 25, Ex. 1, Table B; *see also Schlesinger* Decl. Ex. 2.) As the recovery in the single Primary Case that resulted in net proceeds to the underlying plaintiff, *Gadow*, was insufficient to pay Fast Trak's liens, the second step is to look to Sax's pledged attorney's fees, which secured the agreements. (Burke Decl. ¶ 26, Ex. 1, Step 2 (*McQuaid* (Investment 1) Calculation, *Monigan* (Investment 3) Calculation, *Monigan* (Investment 4) Calculation, *Monigan* (Investment 6) Calculation).)

The amount owed from Sax's pledged attorney's fees to Fast Trak from *McQuaid*, a Secondary Case with five pledged cases (*Alexander, Monigan, McQuaid, Dolan* and *Sax v. Benedetti*) is $62,694. (Burke Decl. ¶ 27, Ex. 1 at 2; Schlesinger Decl., Ex. 3.) The amount owed from Sax's pledge attorney's fees to Fast Trak from the unapplied attorney's fees from cases pledged in *Monigan* Investment 3 are *Wolfe-Lee, Gomes, Heckenlively, Brallier, Matson, Dolan, Marquez, Speaks, Konnof, Gadow,* and *Sax*, for a total is $103,525. (Burke Decl. ¶28, Ex. 1 at 2; Schlesinger Decl. Ex. 4.)

The last case with funds not previously applied is reflected in the *Monigan* Investment 4 Calculation. (Burke Decl. ¶ 29, Ex. 1 at 2.) The total due under these contracts is $135,683. *Id.* Although cases are pledged in the *Wolfe-Lee* matter, the collected attorney's fees are fully applied as the cases were also pledged in the *McQuaid* and *Monigan* cases. (Burke Decl. ¶ 30.)

Thus, Plaintiff is entitled to recover $13,698 for the primary case (*Gadow*), and an additional $301,902.00 for the pledged secondary cases. (Burke Decl. ¶ 32, Ex. 1 at 3.) Accordingly, the undersigned awards Plaintiff $315,600.00 in damages for the first and third causes of action.

### B. Attorneys' fees and costs

In addition to damages, Fast Trak seeks to recover reasonable attorney's fees and costs, as permitted in the agreements. (Pl.'s 2d Suppl. Br. at 7; Dkt. No. 72-2, Ex. 4 at Bates Nos. 027 (¶ 6),

038 (¶ 5).) Specifically, Plaintiff seeks $15,987.50 in attorney's fees and $1,587.96 in costs, for a total of $17,575.46. (Pl.'s 2d. Suppl. Br. at 7; Schlesinger Decl. ¶ 6.)

### 1. Attorneys' fees

The lodestar is the presumptive method for calculating attorneys' fees under federal statutes. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The lodestar calculates the number of hours reasonably spent on a project multiplied by a reasonable rate. *Hensley*, 461 U.S. at 433.

Here, Plaintiff seeks to recover $15,987.50 in attorney's fees. Civil Local Rule 54-5 requires the party seeking fees to furnish the following:

> (b) Form of Motion. Unless otherwise ordered, the motion for attorney fees must be supported by declarations or affidavits containing the following information:
>
> . . .
>
> (2) A statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained. Depending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection, including in camera inspection, as the Judge deems appropriate; and
>
> (3) A brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.

While Plaintiff furnished time records, it did not provide a summary of the time spent by each person nor a description of the relevant qualifications or the prevailing hourly rate in Phoenix, Arizona, where Plaintiff's counsel is located.

Moreover, the undersigned has already afforded Plaintiff a second opportunity to brief the damages issue, which includes attorney's fees and costs, after the first supplemental brief failed to explain how damages were calculated. (Dkt. No. 74 at 1.) In the order requiring the second supplemental brief, Plaintiff was informed that this would be its final opportunity to brief the damages issue, and was "advised against seeking the recovery of the attorneys' fees and costs incurred in connection with any of its supplemental briefs." *Id.* Despite this admonition, Plaintiff

8

seeks $2,575.00 in connection with the supplemental briefing. (*See* Schlesinger Decl., Ex. 17 at 1-2.) Those fees are unreasonable, given that the basis for all monetary relief should have been originally furnished in the motion for summary judgment.

Additionally, counsel failed to request attorney's fees in accordance with the Civil Local Rules, and the Court is under no obligation to scour the billing records to perform its own calculation or to otherwise obtain evidence in support of the hourly rates claimed. *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.") Thus, while perhaps reasonable, there is no information to support Ms. Schlesinger's hourly rate of $250.00.

Notwithstanding, given the facts of this case, the Court is willing to award some attorney's fees, albeit with a substantial haircut, given that the Court would be well within its discretion to award no fees based on the deficiencies outlined above. Thus, after subtracting the $2,575.00 related to the supplemental briefing, Plaintiff incurred $13,412.50 in potentially reasonable attorney's fees. Given Plaintiff's failure to request fees in accordance with Civil Local Rule 54-5(b), the undersigned awards 50% of the remaining amount, which totals $6,706.25.

### 2. Costs

Additionally, Plaintiff seeks to recover costs in the amount of $1,587.96. (Schlesinger Decl. ¶ 5.) Plaintiff also failed to summarize its costs. Despite this deficiency, upon review of the billing records, costs were incurred for court filing fees, travel, telephonic appearances, messenger services to the Court for filing of documents, and the service of the summons and complaint on Defendants. (Schlesinger Decl. ¶ 5, Ex. 17.) The Court, however, finds that the $283.00 in costs incurred in connection with the supplemental briefing to be unreasonable. *See* discussion *supra* Part III.B.i.

The other costs appear reasonable, so the undersigned awards costs in the amount of $1,304.96.

### III. CONCLUSION

In light of the foregoing, the Court awards Plaintiff Fast Trak Investment Company, LLC $315,600.00 damages and $8011.21 in reasonable attorneys' fees and costs, which totals

9

$323,611.21, in connection with the previously-granted motion for summary judgment on the first and third causes of action.

While the undersigned retains jurisdiction to enforce the judgment, the Clerk shall close the case. If deemed necessary, Plaintiff may reopen the case should it decide to pursue its fourth cause of action for writ of attachment. Any request to reopen must be filed on or before November 15, 2018.

IT IS SO ORDERED.

Dated: August 21, 2018

KANDIS A. WESTMORE
United States Magistrate Judge